**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

| | | |
|---|---|---|
| **KRISTINA RENE FROST, and GARY** | § | |
| **ALLEN MAYS, Individually and as** | § | |
| **as Co-Personal Representatives of the** | § | |
| **Estates of SHAWNA RENE MAYS, and** | § | |
| **TRISTAN ALLEN MAYS, Deceased,** | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **CASE NO. 1:21-cv-156** |
| | § | |
| **AMSAFE COMMERCIAL PRODUCTS, INC.;** | § | |
| **AMSAFE, INC.; TRANSDIGM GROUP,** | § | |
| **INC.; and SHIELD RESTRAINT SYSTEMS,** | § | |
| **INC.,** | § | |
| *Defendants.* | § | |

---

## PLAINTIFFS' ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COME, Kristina Rene Frost and Gary Allen Mays, Individually and as Co-Personal Representatives of the Estates of Shawna Rene Mays and Tristan Allen Mays (collectively, "**Plaintiffs**"), and hereby file this Original Complaint and Demand for Jury Trial, and in support thereof, respectfully show this Court as follows:

## I.
## INTRODUCTION

1.      This is a civil action arising out of a defective Evenflo car seat buckle jointly manufactured, designed and/or supplied by Defendants AmSafe Commercial Products, Inc., AmSafe, Inc., TransDigm Group, Inc., and Shield Restraint Systems, Inc. The defective crotch buckle would become stuck and unable to be released when pressed. The defective crotch buckle posed a significant risk in emergency situations, like the one at bar, when it is critical to remove a child from a car seat quickly to prevent significant injury and death.

2.      On July 3, 2018, Kristina Rene Frost was driving her 2004 Buick Rendezvous on the Great Smoky Mountains in Jackson County, North Carolina, returning to Western

Carolina University to be with friends and family on the fourth of July, traveling with her 5-year-old daughter, Shawna, and her 2-year-old son, Tristan. As Kristina was driving, a passing motorist indicated to her to pull over.

3.　　　Kristina put the car in park, upon noticing smoke coming from under the hood of the car opened her driver's side door, when she saw flames already taller than her.  After opening the door and attempting to unbuckle her daughter Shawna (5) from her seatbelt, Kristina caught fire, and rolled herself out in the grass, before running to her son's side, and attempted to free him from his car seat, an Evenflo car seat equipped with a defective crotch buckle manufactured by Defendants. However, the buckle on Tristan's car seat was stuck and would not release. As Kristina attempted to get the buckle to work, she caught fire again, as fire was coming from underneath the vehicle catching her legs and arms on fire. The fact that Tristan's car seat buckle would not release not only caused his own death, but also prevented Kristina from attending to her daughter Shawna and, upon rolling herself out a second time, she stood up to see her daughter all black, no skin left, and no hair, even though Shawna had hair that had never been cut since she was born. The buckle's refusal to release also caused Kristina to suffer significant burns on her own arms and legs, as she was forced to spend more time than it otherwise would have taken to free her minor son had the buckle worked properly the first time she attempted to release it. As Kristina attempted to go back to the vehicle to save her son who was trapped still in his car seat, she witnessed his body explode from the vehicle on fire, and land on the ground.

4.　　　Her daughter, Shawna, died the following day, in pain, and unprecedented trauma. She spent the last hours of her short life encouraging her "mommy [to] be strong," and to survive. Kristina was the sole survivor of the horrific vehicle fire, though not without significant physical disfigurement and a gaping hole in her heart from the loss of her only children. The Mays children and the post-fire pictures are below:



5.     At the time of the incident, Tristan Mays was riding in a SureRide/Evenflo Titan 65 car seat that was equipped with a defective crotch buckle jointly manufactured, designed, distributed, supplied, marketed and/or sold by AmSafe Commercial Products, Inc./AmSafe, Inc./TransDigm Group, Inc./Shield Restraint Systems, Inc. to Evenflo for use in car seats, like the one that Tristan was riding in at the time of the incident.

6.     Kristina and her children's father Gary Allen Mays, bring this suit against the Defendants named herein to recover damages for the wrongful death of their minor children and their loss of filial consortium, including loss of services, society, companionship, comfort, love and solace. Kristina and Gary additionally bring survival claims on behalf of the estates of their minor children for the pain and suffering and injuries they suffered prior to their deaths. Kristina also brings claims for her own individual damages sustained as a result of the significant burns, disfigurement, and distress she sustained as a result of not being able to unlatch her son from the car seat.

## II.
## PARTIES

7.     Gary Allen Mays is a Michigan resident, and brings claims individually and as Co-Personal Representative of the Estates of Shawna Rene Mays and Tristan Allen Mays, deceased.

8.     Kristina Frost is a North Carolina resident, currently living in Lenoir, North Carolina. Kristina, and brings claims individually and as Co- Personal Representative of the Estates of Shawna Rene May and Tristan Allen Mays, deceased.

9.      Gary Allan Mays and Kristina Rene Frost respectfully move this Court for appointment as Co-Guardians ad Litem of the Estates of their two deceased children, Shawna Rene Mays and Tristan Allen Mays and to represent their interests in this lawsuit against Defendants pursuant to Fed. R. Civ. P. 17(c) and N.C.R. Civ. P. 17(b), (c). *Genesco, Inc. v. Cone Mills Corp.*, 604 F.2d 281 (4th Cir. 1979).

10.     AmSafe Commercial Products, Inc. is a corporation that is incorporated under the laws of the State of Delaware. AmSafe has its principal place of business in the State of Arizona. AmSafe may be served with process by serving its registered agent at: CT Corporation System, 1999 Bryan Street, Ste. 900 Dallas, Texas 75201.

11.     AmSafe, Inc. is a corporation that is incorporated under the laws of the State of Delaware. Amsafe has its principal place of business in the State of Arizona. AmSafe may be served with process by serving its registered agent at: CT Corporation System, 1999 Bryan Street, Ste. 900 Dallas, Texas 75201.

12.     AmSafe Commercial Products, Inc. and AmSafe, Inc. are collectively referred to herein as AmSafe.

13.     TransDigm Group, Inc., ("TransDigm"), is a corporation that is incorporated under the laws of Ohio. TransDigm has its principal place of business in the State of Ohio, located at The Tower at Erieview, 1301 East 9th Street, Suite 3000, Cleveland, Ohio 44114.

TransDigm may be served with process by serving its registered agent at CT Corporation System, 4400 Easton Commons Way, Ste. 125, Columbus, OH 43219.

14. Shield Restraint Systems, Inc. ("Shield Restraint"), is a Foreign For-Profit Corporation that is incorporated under the laws of Delaware. Shield Restraint has its principal place of business in the State of Indiana located at 22937 Gallatin Way, Elkhart, IN, 46514, USA. Shield Restraint may be served with process by serving its registered agent at CT Corporation System, 334 North Senate Avenue, Indianapolis, IN, 346204, USA.

15. Based on information and belief, Defendants AmSafe Commercial Products, Inc., AmSafe, Inc., TransDigm Group, Inc. and Shield Restraint Systems, Inc. are legally and in reality, the same entity and/or are partners, joint venturers, alter egos, agents, and/or apparent agents of the other and will be collectively referred to as Defendants herein. The companies are regularly referred to interchangeably. For instance, on Shield Restraint's website, Shield Restraint refers to "**<u>Our</u>** Legacy," claiming:

> Back in the 1950s, a little company called Cummings and Sanders introduced and patented the first lift lever, metal-to-metal lap belt buckle. That single innovation created a whole new industry. Cummings and Sanders eventually became known as AmSafe, which is now the world's leading provider of safety and securement products for the aerospace, defense and ground transportation markets. Innovation fueled consistent growth, leading to the formation of AmSafe Commercial Products (ACP). Bringing full-time focus to safety systems for ground-based vehicles, ACP built a reputation for quality and reliability and grew rapidly to provide solutions for manufacturers of all types of vehicles around the globe.

> At SHIELD, we carry on the legacy of pioneers whose vision and passion form our heritage. Our products reflect their innovative spirit and the commitment to quality and reliability that's become our hallmark. SHIELD was born when ACP and Beam's Seatbelts – two of the world's longest tenured manufacturers of occupant safety systems – merged in early 2013.[1]

---

[1] https://www.trustshield.com/about/; *see also https://www.transdigm.com/business-groups/shield-restraint-systems/* (TransDigm's website interchangeably referring to Shield as one and the same); listing address as TranDigm's https://sec.report/CIK/0001567715; *see also* TransDigm's website referring to AmSafe interchangeably as one and the same: https://www.transdigm.com/business-groups/amsafe-passenger-restraints/.

### III.
### JURSIDICTION AND VENUE

16.     This Court has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a)(1) because Plaintiffs and Defendants are citizens of different U.S. states, and the amount in controversy exceeds $75,000, excluding interest and costs.

17.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state-law claims because they are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution.

18.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district. Defendants regularly contract business in this district and market their products for use in and for sale in this district.

### IV.
### FACTS

19.     Plaintiffs hereby incorporate each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

20.      On July 3, 2018, Tristan Allen Mays was fastened in an Evenflo SureRide/Titan 65 car seat when his mother's vehicle caught fire.

21.     The buckle on Tristan's seat was jointly manufactured, supplied, and/or designed by Defendants and matches the buckle on recalled Evenflo models:



https://csftl.org/evenflo-buckle-recall//



22.     The car seat belonged to Kristina's sister, who received it as a gift at a baby shower around August 2012. Kristina was borrowing the seat temporarily as her son's regular car seat was being cleaned. According to the Evenflo recall page, the SureRide and Titan 65 recalled models, of which Tristan's was one, were distributed between 6/20/2012 and 10/17/2013.

23.     Upon noticing the flames under her vehicle, Kristina Mays quickly exited the vehicle and went directly to the back seat to release her two children from their car seats to get them out of the car.  After several attempts, she was unable to get the defective buckle to release for her to free Tristan from the Evenflo car seat and exit the vehicle.  Her attempts to free Tristan from the Evenflo car seat cost valuable time which could have been used unbuckling and getting the children and herself out of the vehicle and to safety away from the flames. Ms. Frost

sustained severe burn injuries herself as she endured the flames for as long as she could in continuing her efforts to release the car seat buckle that was holding Tristan hostage. Tragically, neither child survived the horrific event.

**The Defective Car Seat Buckle and Defendants' Failures**

24.     The defective car seat buckle, like the one that was equipped on the car seat that Tristan was riding in on the day of the incident was manufactured, distributed, marketed, and sold by Defendants over a four-year period. The buckle is defective because it is unreasonably difficult or impossible to unlatch during ordinary consumer use. Tristan's car seat, like those subject to a recall, was equipped with a QT buckle, a QT3 buckle, or a buckle of substantially similar design ("QT buckle," "harness buckle," "crotch buckle," "car seat buckle," or "buckle"). Evenflo models manufactured between 2011 and 2014, including the SureRide/Titan 65 that Tristan was in, contained this defective component part jointly manufactured, distributed, marketed, designed, and/or sold by Defendants.

25.     The buckle is an integral component of the car seat and is unreasonably difficult to unlatch and/or cannot be unlatched. Consumers reported difficulty in unlatching the crotch buckle, have reported that excessive force and/or effort is required to unlatch the crotch buckle, and/or have reported that they cannot unlatch the crotch buckle at all, thereby requiring the consumer to cut the buckle straps to remove their child.

26.     It is reasonable to expect that a child car seat will become dirty and that the buckle will de-latch even if dirt particles accumulate in the latch. Accordingly, to the extent that Defendants contend that the buckle defect is due to foreign particles accumulating in the buckle and/or latch and consumers have failed properly to clean the buckle apparatus, Defendants failed to disclose any material information relating to the necessary or proper cleaning procedures for the buckling mechanism of the subject buckle.

27.     Defendants have affirmed, promised, warranted, through print, product packaging, internet advertising, and other forms of advertising and marketing materials, that the subject buckles were free from defects and suitable for their intended use.

28.     The only "cleaning instructions" that accompanied that seat related to the buckle was that a consumer should not "immerse buckle in water or lubricate."

29.     Defendants knew or should have known that the subject buckle contained one or more defects that caused it to fail to function as intended. The defects impede or otherwise prevent the safe, effective, and timely removal of children from the car seats and pose an unreasonable safety hazard to consumers and/or child passengers using the seats with the buckles, especially when, as here, it becomes necessary to quickly remove children from the subject seats to avoid injury or death.

30.     Defendants possessed superior knowledge of the subject buckles and their failures and defects. Despite the fact that the subject buckles were and are defective, and despite Defendants' knowledge that the subject buckles were and are defective, Defendants manufactured, produced, sold and, until the recall, continued to sell the subject buckles for consumer use, like it was used in the instant case.

31.     Plaintiffs reasonably relied on Defendants' affirmations and promises in allowing their child to use the car seat equipped with the buckle in question. At all times, Plaintiffs, without any fault or lack of diligence on their own part, were unaware and ignorant of the true character, nature, and quality of the subject buckle. Plaintiffs were also unaware and ignorant of, without any fault or lack of diligence on their own part, the defects and failures of the subject buckles.

32.     Defendants had the duty, and have a continuing duty, to disclose material facts relating to their car seats to Plaintiffs and consumers. Defendants failed to inform Plaintiffs and the purchaser of the subject car sear of the buckle defect prior to the date of the incident.

Defendants knew about and concealed the defects and related unreasonably dangerous safety hazards from Plaintiffs at the time of sale through the date of the incident.

33.     In early 2014, the Office of Defects Investigation ("ODI") of the National Highway Traffic Safety Administration ("NHTSA") initiated an investigation after receiving complaints about the functionality of the buckles. Users complained that it was unreasonably difficult to unlatch the buckle and that the buckle did not unlatch at all.

34.     As of Feb. 5, 2014, the ODI received 18 reports from consumers alleging difficult in unlatching the crotch buckles in the subject seats for MY 2011 through 2013. Nine of the consumers reported that they could not unlatch the buckle at all, with three consumers reporting that they were ultimately forced to cut the harness to remove their child. The ODI decided to conduct an investigation concerning all Evenflo car seats equipped with the QT buckle, QT3 buckle, or a buckle of substantially similar design.

35.     Reports relating to the defective buckles continue to be received by the ODI. Through testing, research, consumer complaints, and the ODI investigation, Defendants knew or should have known that the subject buckles did not work as intended and impede or otherwise prevent the safe and timely removal of children, like Tristan, from the seats. Hundreds, if not thousands, of users experienced the unbuckling problems—demonstrating the dangerousness and widespread nature of the effect.

36.     The following is a sampling of the complaints of which Defendants were aware:

| Date of Incident | Summary |
| --- | --- |
| 02/24/2014 | **BOOSTER CAR SEAT HAS BUCKLE THAT IS MOST ALWAYS VERY DIFFICULT TO RELEASE, REQUIRING TWO HANDS AND EXCESSIVE FORCE.** THE **BUCKLE** APPEARS IDENTICAL, ASIDE FROM COLOR, TO THOSE ON THE GRACO CAR SEATS THAT HAVE BEEN RECALLED. **THE BUCKLE HAS BEEN DIFFICULT SINCE I FIRST PURCHASED AND USED THE SEAT. I HAVE CONTACTED EVENFLO** REGARDING THE MATTER. |
| 07/13/2013 | **BUCKLE** ON MY EVEN FLO MAESTRO CAR SEAT MODEL 3102149 MANUFACTURED APRIL 18, 212, **WOULD NOT RELEASE. HAD TO CUT THE STRAPS TO GET MY CHILD OUT.** |

01/01/2014 THE **EVENFLO** MAESTRO #31011270 CHILD S **SEAT HARNESS BETWEEN THE LEG LOCK STICKS AND IS VERY HARD TO LOCK AND UNLOCK IT HAS BEEN DIFFICULT TO USE EVER SINCE WE BOUGHT IT.**

01/09/2013 TL* THE CONTACT OWNS AN **EVENFLO** MAESTRO FORWARD FACING CHILD SAFETY SEAT, MODEL NUMBER: 3102198, AND MANUFACTURED MAY 15, 2012. THE CONTACT STATED THAT **THE BUCKLE DELAYED TO RELEASE THE HARNESS WITH NORMAL THUMB PRESSURE. THE CONTACT HAD TO UNHOOK THE INTERNAL HARNESS TO BE ABLE TO RELEASE THE CHILD FROM THE SEAT. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE.**

12/09/2013 **UNABLE TO UNLATCH HARNESS STRAPS FROM CROTCH BUCKLE.**

01/09/2014 I BUCKLED MY DAUGHTER IN TO HER CARS EAT AND TOOK OFF TO OUR DESTINATION. WHEN WE ARRIVED **I COULD NOT UNBUCKLE HER. AFTER AMPLE TIMES UNTIL I JUST COULD NOT UNBUCKLE HER. I CALLED THE POLICE AND THEY HELPED ME TO GET HER OUT SAFELY BY CUTTING THE STRAPS.**

07/28/2013 TL* THE CONTACT OWNS A **EVENFLO** MAESTRO REAR FACING CONVERTIBLE CHILD SEAT MANUFACTURED ON 9/7/12. THE CONTACT STATED THAT **THE CROTCH BUCKLE FAILED TO UNLOCK CAUSING THE CONTACT TO USE PLIERS TO UNLOCK THE HARNESS.** THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE.

06/18/2013 TL* THE CONTACT OWNS AN **EVENFLO** MAESTRO (3102198) CHILD SEAT MANUFACTURED ON JULY 20, 2012. THE CONTACT STATED THAT **THE CROTCH BUCKLE BETWEEN THE CHILD'S LEGS WOULD BECOME STUCK AND WOULD NOT DISENGAGE.** THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE CONTACT CONTINUED TO USE THE CHILD SEAT. THE CHILD SEAT WAS NOT REPLACED. *TR

11/08/2012 **CHILD RESTRAINT BUCKLE STUCK. CANNOT GET TO RELEASE CLIPS.** THIS IS A COMBINATION CHILD RESTRAINT NOT A REAR FACING. *TR

10/09/2012 5 POINT **CROTCH BUCKLE STICKS AND BECAME NEARLY IMPOSSIBLE TO DISENGAGE. THERE IS NO FOOD OR LIQUID THAT IS ON THE CROTCH BUCKLE THAT WOULD CAUSE THIS...**THE CAR SEAT IS 8 MONTHS OLD AND WAS ONLY USED ONCE A WEEK. THE COMPANY SENT OUT A REPLACEMENT HARNESS BUT WE HAVE DECIDED TO PURCHASE A NEW CAR SEAT INSTEAD OVER SAFETY CONCERNS. *TR

02/13/2014 **I'VE HAD ISSUES WITH MY SONS CARSEAT FOR A WHILE NOW WITH THE BUCKLE THAT GOES BETWEEN HIS LEGS BEING HARD TO UNLATCH.** IT'S JUST BEEN GETTING MORE DIFFICULT TO UNLATCH AS TIME GOES ON. THE RED BUTTON IS VERY HARD TO PUSH. BRAND: **EVENFLO** NAME: CHASE MODEL # 30611352 MADE IN 2013/01/18 EXPIRES ON 2019/01/17

10/25/2013 WHEN MY DAUGHTER IS STRAPPED IN THE CAR SEAT **THE BUCKLE GETS STUCK AND WONT UNLATCH SO SHE HAS HAD TO CLIMB OUT OF IT...WHEN YOU PUSH THE RED BUTTON IT DOESN'T UNLATCH** AND DOESN'T EVEN MOVE LIKE ITS STUCK. *TR

09/28/2013 **EVENFLO** CAR SEAT ACTUAL **BUTTON ON BUCKLE JAMMED & MY 3YR OLD WAS STUCK IN CAR SEAT...I** AM NOT SURE OF

MANUFACTURE DATE BOUGHT @ WAL-MART 3-4 MONTHS AGO & MY CHILD HAD TO HAVE CAR SEAT SO SWAPPED FOR SAME CAR SEAT IF THERE IS A RECALL ON CAR SEAT I WOULD LIKE TO KNOW SO THAT MY CHILD IS NOT IN HARMS WAY. *TR

09/07/2013 TL* THE CONTACT OWNS AN **EVENFLO** CHASE CONVERTIBLE CHILD SEAT, MODEL NUMBER: 30611355, AND MANUFACTURED JANUARY 29, 2013. THE CONTACT STATED THAT **THE CROTCH BUCKLE CLIPS HAD TO BE UNLATCHED WITH ABNORMAL FORCE.** THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE CHILD SEAT WAS NOT REPLACED.

02/09/2014 YOUR **EVENFLO** CHASE LX HARNESSED BOOSTERS NEED TO BE LOOKED INTO... **THE BELT/LATCH GETS STUCK I ALMOST HAD TO CUT MY SON OUT OF THE CAR SEAT BECAUSE THE LATCH WOULD NOT RELEASE.** GRACO HAS SEMI ADRESSED THEIR ISSUE AND YOU NEED TO AS WELL... I BOUGHT IT IN 2013 ... MODEL #30611352 MADE 03/02/2013 EXPIRES 03/20/2019.... THIS NEEDS TO BE LOOKED INTO BEFORE KIDS GET HURT!!

10/28/2012 TL* THE CONTACT OWNS AN **EVENFLO** CHASE LX CHILD SEAT, MODEL 325, AND MANUFACTURED JULY 20, 2012. **THE CONTACT ATTEMPTED TO RELEASE THE HARNESS SAFETY STRAPS FROM THE BUCKLE BUT THE BUCKLE HAD BECOME STUCK. THE CONTACT HAD TO SEVER THE STRAPS IN ORDER TO RELEASE THE STRAPS FROM BEING STUCK.** THE CONTACT WAS NO LONGER USING THE CHILD SEAT.

08/10/2013 TL* THE CONTACT OWNS AN **EVENFLO** CHASE DLX CHILD RESTRAINT SEAT, MODEL NUMBER: 32911253 AND MANUFACTURED FEBRUARY 21, 2012 (N/A). THE CONTACT STATED THAT **THE CROTCH BUCKLE WAS DIFFICULT TO UNLATCH.** THE MANUFACTURER WAS NOT NOTIFIED OF THE PROBLEM. THE CHILD SEAT WAS NOT REPLACED.

12/06/2013 HAVE A **EVENFLO** BOOSTER, WITH HARNESS.... MODEL #32911253 NAME: CHASE MANUFACTURE DATE: 03-26-2012. **HAD BEEN HAVING PROBLEMS OFF AND ON WITH, BUTTON FOR HARNESS ATTACH... TODAY, WOULD NOT RELEASE... BOTH LEFT AND RIGHT CLIPS WOULD NOT RELEASE FROM THE HARNESS BUTTON WOULD NOT RELEASE... IF THERE HAD BEEN AN ACCIDENT WITH FIRE, THE ONLY WAY TO GET THE BABY OUT WOULD BE TO REMOVE THE WHOLE CAR SEAT FROM VEHICLE... TODAY, I STRIPPED HER DOWN, SHOES AND COAT AND I PULLED ON THE HARNESS STRAPS DOWN OVER HER SHOULDERS, AND PROCEEDED TO PULL ONE STRAP AT A TIME AND FEED HER LEGS THROUGH... ONCE WE HAD BOTH LEGS FREE WE WEDGED HER AND HER HIPS FREE... HER FATHER HAD TOLD ME A WEEK AGO TO CARRY SCISSORS IN CASE SOMETHING HAPPENED TO CUT HER OUT...**

08/09/2013 TL* THE CONTACT OWNS AN **EVENFLO** CHASE CHILD RESTRAINT SEAT, MODEL NUMBER: 32911254, AND MANUFACTURED MAY 10, 2010. THE CONTACT STATED THAT **WHILE ATTEMPTING TO REMOVE THE CHILD FROM THE SEAT, THE CROTCH BUCKLE FAILED TO RELEASE. THE CONTACT WAS ABLE TO UNLOCK THE HARNESS AFTER SEVERAL ATTEMPTS.** THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. ...UPDATED 11-12-13 *BF **THE CONSUMER DISPOSED OF THE CAR SEAT.** UPDATED 11/19/13

02/12/2012 TL* THE CONTACT OWNS AN **EVENFLO** CHILD SEAT MODEL 32911254, MANUFACTURED 12-27-11. THE CONTACT STATED THAT **THE TOP AND LOWER BUCKLES FAILED AND MADE IT VERY DIFFICULT TO BUCKLE AND RELEASE THE HARNESS. THE CONTACT HAD TO TAKE THE SEAT INTO THE STORE WITH THE CHILD IN THE SEAT TO GET ASSISTANCE WITH RELEASING THE CHILD. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE.**

10/21/2013 CLIENT RECEIVED CAR SEAT FROM MY DISTRIBUTION PROGRAM IN JULY 2013. IN OCTOBER 2013 SHE RETURNS. SHE STATED **IT TOOK 3 PEOPLE TO GET HER DAUGHTER FREE FROM THE SEAT. THE BUCKLE WOULD NOT PUSH IN TO RELEASE THE CHILD FROM THE RESTRAINT AT THE CROTCH BUCKLE.** *TR

03/20/2013 **CONVERTIBLE CAR SEAT BUCKLE STICKS AND WILL NOT RELEASE. FIRE DEPARTMENT CALLED AFTER 30 MINUTES OF TRYING TO RELEASE THE CHILD. FIRE DEPARTMENT HAD TO CUT THE WEBBING TO FREE THE CHILD. BUCKLE IS STILL ENGAGED AND WILL NOT RELEASE.** PROGRAM SPECIFIC CAR SEAT NOT FOR RETAIL SALE. LOW INCOME SAFETY SEAT PROGRAM SURE RIDE/TITAN65 3712198. *TR

02/20/2014 **BUCKLE HAS BEEN VERY HARD TO UNLATCH** OVER THE LAST 3 TO 4 MONTHS, **TAKING SEVERAL MINUTES AND LOTS OF PUSHING TO GET IT UNDONE. MOTHER WAS UNABLE TO UNLATCH THE LAST TIME CHILD WAS USED SEAT. FATHER TRIED AND AFTER 20 MINUTES OF A CRYING CHILD BECAUSE HE WAS STUCK, SEAT WAS UN-INSTALLED FROM VEHICLE AND CARRIED INTO HOUSE WITH CHILD IN IT. WHEN INSIDE AFTER 15 MINUTES OF TRYING WAS FINALLY ABLE TO GET THE BUCKLE TO UNLATCH. WAS READY TO CUT HARNESS STRAPS WITH SCISSORS OR KNIFE TO GET CHILD OUT.** CAR SEAT IS NO LONGER IN USE.

01/31/2014 THE LOCAL FIRE STATION IN BONITA SPRINGS, FL PROVIDED ME WITH A CHILD AUTO RESTRAINT/ BOOSTER SEAT AT NO CHARGE THROUGH A GRANT. THE MANUFACTURE OF THE SEAT IS **EVENFLO**. THE SAFETY STRAP RELEASE MECHANISM LOOKS IDENTICAL TO THAT WHICH IS BEING RECALLED UNDER THE GRACO BRAND. **THE LATCH IS VERY DIFFICULT TO UNLOCK THE HARNESS.** THE **EVENFLO** WEB SITE DEPICTS AN IDENTICAL SEAT WHICH APPEARS TO HAVE THE CORRECTED RELEASE BUTTON INSTALLED (SQUARE VS. OVAL OR ROUND). THERE IS NO SPECIFIC EVENT EXCEPT FOR THE **DIFFICULTY OF UNLOCKING THE MECHANISM ON A DAILY BASIS.** I DID SUBMIT A REGISTRATION CARD TO THE COMPANY JUST LAST WEEK. SINCE THIS WAS RECEIVED THROUGH A GRANT I HAVE NO RECOURSE TO GO BACK TO WHERE IT MAY HAVE BEEN PURCHASED. THE COMPANY IS LOCATED IN THE STATE OF OHIO.

12/03/2013 THE CROTCH **BUCKLE HAS JAMMED AND IT IS IMPOSSIBLE TO GET THE BUCKLE TONGUES OUT OF THE BUCKLE. SEVERAL ADULTS HAVE TRIED WITH THE FATHER TRYING FOR 2 HOURS.**

09/30/2012 **EVENFLO** MAESTRO SEAT FOR MY THAN 3 YEAR OLD **THE BUCKLE JAMMED UP COMPLETELY AND WE WERE UNABLE TO REMOVE HIM FROM THE SEAT. EVENFLO** REPLACED

THE **BUCKLE** BUT NOW THE NEW **BUCKLE** IS STARTING TO GET VERY HARD TO USE. *TR

11/15/2013 WE OWN AN **EVENFLO** CAR CAR WITH AN **IMPOSSIBLE BUCKLE.** IT IS DIFFICULT TO LATCH AND **ALMOST IMPOSSIBLE TO UNLATCH.** THE **EVENFLO** CO. HAS NOT OFFERED ANY ASSISTANCE TO US IN FIXING THIS PROBLEM, EXCEPT TO TELL US TO UNINSTALL THE SEAT AND RE-INSTALL THE SEAT AND THIS HAS NOT DONE A THING TO HELP OUR ISSUE. WE ARE GRANDPARENTS AND WE KNOW CAR SEATS AFTER HAVING RAISED 7 CHILDREN. AND MY HUSBAND HAS READ AND RE-READ THE INSTRUCTIONS. **THIS IS CLEARLY A MECHANICAL PROBLEM WITH THE LATCHING SYSTEM.**

02/01/2014 **DIFFICULTY UNLATCHING THE CROTCH BUCKLE. IT IS DIFFICULT TO REMOVE THE** CHILD FROM THE RESTRAINT AND I AM AFRAID THE **BUCKLE** CAN BECOME STUCK WHEN LATCHED SO THAT IT CANNOT BE OPENED BY DEPRESSING THE **BUCKLE'S** RELEASE BUTTON.

02/12/2014 WE HAVE HAD PEOPLE COME BACK IN WITH IN WITH THE **EVENFLO** MAESTRO CAR SEAT. **THEY COULD NOT GET THEIR CHILDREN OUT OF THE SEAT BECAUSE THE BUCKLE WAS STUCK. WE HAD TO ACTUALLY CUT THE BELTS TO GET THREE OF THE CHILDREN OUT OF THE SEAT.** WE HAD TO REPLACE THEM WITH NEW SEATS. **WE ARE A CERTIFIED INSTALLATION FACILITY. FOURTH RETURN CAME IN TODAY.**

02/11/2014 **EVENFLO** CAR SEATS USE THE SAME **BUCKLES** BEING RECALLED IN THE GRACO RECALL DUE TO CHILDREN BEING TRAPPED IN EMERGENCY SITUATIONS. **I HAVE ALL BUT BROKEN MY FINGERS ATTEMPTING TO PUSH THE BUTTON HARD ENOUGH TO EJECT THESE BUCKLES. IT IS A SAFETY HAZARD TO ANY CHILD USING THIS BUCKLE SYSTEM.** PLEASE HELP KEEP OUR BABIES SAFE AND MAKE **EVENFLO** RECALL THE SAME PRODUCT RECALLED BY GRACO.

01/01/2014 THERE HAS BEEN SEVERAL OCCASIONS WHERE **THE 5 POINT CROTCH BUCKLE ON MY TODDLERS CAR SEAT WILL NOT UNLATCH. I HAVE HAD TO UNBUCKLE THE CAR SEAT OUT OF MY VEHICLE WITH MY 40 POUND TODDLER IN IT, TAKE IT INSIDE MY HOUSE, AND SPEND MINUTES TRYING TO TAKE HIM OUT.** IF I HAD NOT PAID ALL THAT MONEY TO BUY BOTH CAR SEATS (I HAVE TWO IDENTICAL), I WOULD HAVE ALREADY CUT THE STRAPS OFF. **I'M JUST AFRAID THAT IF THERE WAS EVER AN ACCIDENT WITH FIRE INVOLVED, MY CHILD'S LIFE WOULD BE AT RISK.** PLEASE HELP!

02/11/2014 THE RED RELEASE BUTTON GETS **STUCK AND IS ALMOST IMPOSSIBLE TO GET IT TO RELEASE TRAPPING THE CHILD IN THE SEAT.** I HAVE HAD TO TRY OVER 30 TIMES IN ONE SITTING WITH BOTH THUMBS AT THE SAME TIME TO GET IT TO RELEASE. I ALWAYS BREAK BOTH MY THUMB NAILS. TODAY WAS THE 15TH TIME IT HAS HAPPENED AND I WAS FORCED TO DRIVE BACK HOME AS I COULDN'T GET HER OUT

02/19/2014 TL-THE CONTACT OWNS AN **EVENFLO** SURE RIDE TITIN CHILD RESTRAINT (NA), MODEL NUMBER 37111435 (NA) AND MANUFACTURED JANUARY 29, 2013. THE CONTACT STATED THAT **THE CROTCH BUCKLE WAS DIFFICULT TO UNLATCH UNTIL AFTER NUMEROUS**

**ATTEMPTS.** THE MANUFACTURER WAS NOT NOTIFIED OF THE PROBLEM. **THE CHILD SEAT HAD TO BEEN REPLACED.** JS

12/18/2013 TL* THE CONTACT OWNS AN **EVENFLO** CHASE CHILD RESTRAINT SEAT, MODEL NUMBER 329-21010(NA), AND MANUFACTURED APRIL 29, 2010. THE CONTACT STATED THAT **THE CROTCH BUCKLE WOULD NOT LATCH OR UNLATCH PROPERLY.** THE CONTACT CLEANED THE **BUCKLE** AREA AND SPRAYED A LUBRICANT WHICH ALLOWED THE **BUCKLE** TO FUNCTION CORRECTLY. THE MANUFACTURER STATED THAT THE CHILD SEAT WAS NOT SAFE TO USE BECAUSE THE LUBRICANT MAY COMPROMISE THE

01/03/2014 TL* THE CONTACT OWNS A **EVENFLO** CHILD RESTRAINT SEAT, MODEL NUMBER 329-2566 AND MANUFACTURED APRIL 22, 2010.(NA) THE CONTACT STATED THAT **THE CROTCH BUCKLE BECAME STUCK AND FAILED TO UNLATCH UNLESS PRESSURE WAS APPLIED REPEATEDLY.** IN ADDITION, THE **BUCKLE** WOULD NOT LATCH CORRECTLY. THE CONTACT CLEANED THE **BUCKLE** AND SPRAYED A LUBRICANT IN ORDER FOR IT TO FUNCTION PROPERLY. THE MANUFACTURER WAS NOTIFIED AND THEY STATED THAT THE CHILD SEAT WAS NOT SAFE TO FOR USE SINCE THE LUBRICANT WAS APPLIED TO THE CHILD SEAT. THE CONTACT HAD NOT REPLACED THE CHILD SEAT.

03/21/2014 WHILE RIDING STRAPPED IN TO THIS CAR SEAT THE CHEST **BUCKLE** IS COMING IN-DONE. MY DAUGHTER IS 10.4 KG AND 15 MONTHS OLD. AFTER PROPERLY SECURING HER IN THE SEAT, THE CHEST PIECE POPS OPEN IF SHE GOES TO LEAN FORWARD. **THE BUCKLE BETWEEN THE LEGS ALSO GETS STUCK FREQUENTLY. IT CAN BE PRESSED COMPLETELY DOWN AND THE CLIPS DO NOT COME OUT LIKE THEY SHOULD.** THE CHEST PIECE POPPING OPEN HAS HAPPENED TWICE NOW. THIS CAR SEAT HAS NOT BEEN IN ANY

03/04/2014 NO ACCIDENTS OR INCIDENTS JUST **TRIED TO PUSH RELEASE BUTTON THAT IS LOCATED BETWEEN LEGS WOULD NOT RELEASE. IT STARTED OFF STIFF WHEN PURCHASED** AT WALMART. **HAD TO REMOVE STRAPS FROM BACK SHOULDER PLATES TO GET CHILD OUT.**

02/27/2014 WE HAVE THE **EVENFLO** CHASE BOOSTER CARSEAT, MANUFACTURED 7/6/2012. **THE BUCKLE LOCKED AND WOULD NOT RELEASE WHEN THE RED BUTTON WAS PRESSED! CHILD WAS STUCK FOR AN EXTENDED TIME.**

06/21/2014 I HAVE THE **EVENFLO** CHASE CARSEAT LISTED ON THE **EVENFLO** RECALL BUT THE REPRESENTATIVE I TALKED WITH **EVENFLO** SAYS IT IS NOT ON THE RECALL. IT WAS ON THE RECALL ACCORDING TO THEIR INFORMATION ON THE COMPUTER. I **COULD NOT**

04/11/2014 TL* THE CONTACT OWNS AN **EVENFLO** CHASE CHILD SEAT MODEL NUMBER (30611352), MANUFACTURED IN 06/18/2013. **THE CONTACT ATTEMPTED TO RELEASE THE HARNESS SAFETY STRAPS BUT THE BUCKLE SEIZED. THE CONTACT HAD TO SEVER THE STRAPS IN ORDER TO RELEASE THE CHILD.** THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE.

03/22/2014 **WHEN TRYING TO REMOVE MY GRANDSON FROM THE CAR SEAT, THE RED BUTTON WILL NOT PUSH IN TO UNLATCH THE LOCK.** WE HAVE TAKEN IT APART AND CLEANED IT BUT IT CONTINUES TO DO THIS 50% OF THE TIME I USE THIS CAR SEAT.

03/09/2014 **THE BUCKLE THE CAR SEAT WILL NOT COME UNDONE WHEN PUSHING THE RED BUTTON. WE'VE HAD TO EXTEND THE STRAPS AND PULL THE CHILD OUT FROM THE TOP MULTIPLE TIMES. THIS HAPPENS MULTIPLE TIMES A WEEK.**

03/17/2014 **EVENFLO/CHASE CAR SEAT HARNESS BUTTON WONT WORK HAD TO TAKE CAR SEAT APART FOR CHILD TO GET OUT.I COULD SAVE TIME BY CUTTING STRAP**

11/15/2013 THE CONTACT OWNS A EVENFLOW CHILD SAFETY SEAT MODEL NUMBER 30611117, MODEL NAME CHASE AND MANUFACTURED ON APRIL 16, 2013. **THE CONTACT STATED THE LOCKING MECHANISM WHICH IS POSITION BETWEEN THE CHILD'S LEGS, BECAME VERY DIFFICULT TO UNLOCK ON MULTIPLE OCCASIONS.** THE MANUFACTURER WAS NOT NOTIFIED IN REFERENCE TO THE DEFECT. JFT

12/15/2013 **THE RED BUTTON ON THE BUCKLE WAS DIFFICULT TO UNBUCKLE AT TIMES. IT GOT TO THE POINT THAT I NEEDED TO STRUGGLE FOR 10 MINUTES TO UNLATCH THE BUCKLE TO REMOVE MY GRANDSON FROM CARSEAT. I** CLEANED THE **BUCKLE** AND ACTUALLY SPRAYED A LITTLE WD-40 INSIDE TO MAKE IT FUNCTION ADEQUATELY. SINCE THEN, I NOTED THE GRACO **BUCKLE** RECALL AND IT APPEARS FROM THE PICTURE THAT THIS MAY BE FROM THE SAME SUBCONTRACTOR.

05/06/2014 TL* THE CONTACT OWNS AN **EVENFLO** MAESTRO CHILD SEAT, MODEL NUMBER 3102198, MANUFACTURED FEBRUARY 24, 2012. **THE CONTACT STATED THAT THE BUCLE WOULD BECOME DIFFICULT TO RELEASE WHEN ATTEMPTING TO REMOVE THE CHILD FROM THE SEAT.** THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE.

03/04/2014 TL* THE CONTACT OWNS AN **EVENFLO** MAESTRO CHILD SEAT MANUFACTURED IN 9/17/2012. **THE CONTACT STATED THAT SHE ATTEMPTED TO REMOVE HER CHILD FROM THE SEAT BUT THE BUCKLE WOULD NOT UNLOCK. THE CONTACT STATED THAT THE CHILD WAS TRAPPED IN THE SEAT FOR A EXTENDED PERIOD OF TIME. AFTER PLAYING WITH THE LOCK FOR A WHILE, THE SEAT BUCKLE FINALLY RELEASED.** THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE SEAT HAD NOT BEEN REPAIRED.

03/15/2014 **THE CROTCH HARNESS RELEASE BUTTON IS VERY DIFFICULT TO RELEASE THE HARNESS. EVEN WITHOUT THE HARNESS PLUGGED INTO THE RELEASE BUCKLE, PRESSING ON THE BUTTON CREATES A BINDING SOUND AND MUST BE PRESSED HARD TO OPERATE. IT TAKES SEVERAL ATTEMPTS TO RELEASE IT IF YOUR NOT PRESSING HARD ENOUGH IN THE RIGHT PLACE. WE HAVE REMOVED THE SEAT FROM USE DUE TO THIS SAFETY CONCERN.** ALSO, THE HARNESS EDGE IS STARTING TO FRAY AFTER ONLY ABOUT 1 YEAR OF USE.

03/17/2014 WE HAVE A **EVENFLO** SECUREKID AND **THE BUCKLE HAS BEEN HARD TO LATCH AND ULTIMATELY BECAME STUCK. ONLY AFTER**

| | |
|---|---|
| | **BRUTE FORCE WAS APPLIED TO THE BUTTON DID THE BELT BECOME UNLATCHED. WE WERE ABLE TO REMOVE OUR SON IN A MATTER OF MINUTES, BUT UNDER DIFFERENT CIRCUMSTANCES IT COULD OF BEEN VERY DANGEROUS.** |
| 06/13/2014 | **THE HARNESS WOULDN'T RELEASE AND HAD TO CUT MY DAUGHTER OUT OF IT** |
| 02/11/2013 | TL* E CONTACT OWNS AND **EVENFLO** CAR SEAT SURE RIDES TITAN 65, MODEL 311324, AND MANUFACTURED MARCH 3-20-13. **THE CONTACT STATED THAT THE SAFETY SEAT HARNESS SAFETY BUCKLE BECAME STUCK. THE BUCKLE DID NOT UNLATCH AND THE CONTACT HAD TO RELEASE THE HARNESS SHOULDER STRAPS TO TAKE THE CHILD FROM THE SEAT.** THE MANUFACTURE WAS NOT MADE AWARE OF THE FAILURE. |
| 04/01/2014 | **BUCKEL GETS STUCK** |
| 03/03/2014 | CONSUMER WRITES IN REGARDS TO CHILD CAR SEAT RECALL INFORMATION. *SMD **THE CONSUMER STATED SHE EXPERIENCED A FAILURE WITH THE BUCKLE RELEASE.** GRACO INCORRECT, CORRECT MAKE IS **EVENFLO.** UPDATED 03-11-14 *BF |

37.     Defendants jointly designed, manufactured and produced the crotch buckle, which was incorporated into Tristan' car seat, would not allow it to release or unlock consistently. The buckle became stuck in the latched position making it impossible to remove a child from the seat.  The risk that children could not be removed quickly in an emergency makes the buckle used in the subject car seat unreliable, unsafe, and a dangerously defective buckle design.

38.     Defendants had superior knowledge of the buckle defects and should have known that the defects were not known or reasonably discoverable by Plaintiffs. Defendants knew, since at least 2011, about the buckle related defects through sources not available to consumers, including through pre-release testing data, consumer complaints to Defendants, related retailers, Evenflo, and the ODI, post-release testing data, high failure rates, return and exchange data, and other internal sources of information.

39.     Plaintiffs are informed and believe and based thereon allege that Defendants monitored and continue to monitor the NHTSA and ODI websites and various other websites in order to evaluate their products, including those utilizing designs like that used in the subject buckle.

40.     Alternatively, Defendants knew that if food particles or contaminated material were to get into the buckle mechanism, it would cause the release to not function properly, making it impossible to remove a child from the seat in an emergency. Defendants failed to properly warn consumers and users, like Plaintiffs, of this critical risk and need to clean the buckle device.

41.     The nature of this defect is such that an ordinary consumer would not realize until it was too late.

42.      Prior to this incident there was no warning to Kristina Frost that the buckle would not release or unlatch. Neither Kristina Frost nor her sister or purchaser of the car seat containing the subject buckle, were warned by Defendants of the unreasonable risk that the buckle mechanism would not function properly in an emergency situation where the safety of the child required them to be removed from the car seat and vehicle immediately. Nor were Plaintiffs warned that the buckle could become contaminated and fail to function properly. This failure to warn or disclose these known risks proximately caused the damages to Plaintiffs.

43.      Defendants made fraudulent misrepresentations and false statements regarding the functionality of the subject buckle.

44.     Shield Restraint touts its occupant safety systems and restrains to be "quality" and trustworthy. Shield Restrain claims to "care deeply about the safety of . . . customers", proclaiming that its "global team of experts is close by, offering complete in-house design, development and testing capabilities to ensure outstanding product performance and reliability." Shield Restraint misrepresented that its in-house design and testing team "rigorously engineered [and] tested" products, like the subject buckle, even though such a defect would have been readily revealed in such testing. Shield Restraint promises that they can be trusted "by delivering quality", claiming that "it's what we help you build every day, when a little girl hugs her dad after an amusement park ride. Or when a trucker makes it home after a long haul. Or when millions of other people the whole world over buckle up in one of our occupant safety systems."

45.     AmSafe, Inc. likewise promises superior safety on their website, more than mere puffing, and states the following:

> *Products are used in both commercial and general aviation, military and civilian applications. Protecting passengers is a priority to AmSafe and its products help move millions of people safely and securely in the air. With manufacturing operations and service facilities around the globe, AmSafe is focused and committed to providing quality products and timely, cost-effective solutions to customers worldwide.*

46.     Specifically, AmSafe failed to disclose that the crotch buckle may become stuck when you need to emergency exit from a vehicle.  It was definitely not "convenient" for Kristina Frost when she tried to get her children from the burning vehicle because the crotch buckle on the car seat did not function.


**Defendants' Knowledge of the Defect and Risk**

47.     Car seats, and their respective buckles, are used to protect children while they are passengers in vehicles. Specifically, car seats, along with their respective buckles, are intended to protect children in the event of an emergency. The ability to be able to quickly release the buckle to free a child from the car seat is an imperative function of a safe car seat. It is foreseeable that the car seat, and its respective buckle, would be involved in a motor vehicle collision or fire requiring an emergency exit and quick release to free the child from the car seat and impending dangerous situation.  The Defendants' buckle design installed in the subject car seat failed in this foreseeable situation.

48.     Defendants knew there was a risk to the safety of children when installing the buckle mechanism in the subject car seat. Many consumer complaints were reported to Defendants regarding the failure of the buckle to release when attempting to free the child from the car seat.   A known defective design that Defendants chose to ignore and put the lives of children at risk.

49.     Safer alternative buckle designs existed at the time the subject car seat left the control of Defendants. There were different buckle mechanisms available to use which were

scientifically safer but Defendants failed to use a safer alternative buckle even when they knew or should have known it would cost the lives of children.

50.     Defendants failed to disclose the fact that the QT/QT3 harness crotch buckle would fail to release and no instructions or warning were made to any owners that they knew and were aware of.

51.     Defendants had full knowledge of the defects in the car seat design, specifically the crotch buckle release, in the subject car seat, among many others car seats, yet Defendants failed to disclose the defect to the public.

52.     Defendants had the choice, opportunity, and the responsibility to prevent further personal and economic harm by timely, properly, and fully recalling the defective car seat buckles, including the subject car seat buckle, and timely and properly correcting safety defects.

53.     Defendants knew that consumers and users, such as Plaintiffs, expect that they will employ all reasonable efforts to detect safety defects and warn consumers and users.

54.     Independent of any failures by Defendants described herein, Defendants breached their duties to Plaintiffs by failing to provide appropriate and reasonable warnings. In doing so, Defendants departed from the reasonable standard of care required of them.

55.     The subject Evenflo SureRide/Titan 65 car seat buckle is defective and unreasonably dangerous as those terms are defined by North Carolina Law.  The subject QT/QT3 harness crotch buckle on the subject Evenflo SureRide/Titan 65 car seat was defective and unreasonably dangerous as those terms are defined by North Carolina Law.  The subject car seat buckle contains design defects, detailed above and below, which make it more prone to failures to release the buckle which increases the likelihood a child would not be able to be removed in an emergency situation. The subject QT/QT3 harness crotch buckle on the car seat contains design defects, detailed above and below, which make it more prone to failures to release the buckle which increases the likelihood a child would not be able to be removed in an emergency situation.

**V.**
**CLAIMS FOR RELIEF**

**COUNT 1**
**Negligence, Gross Negligence, Recklessness**

56.     Plaintiffs hereby incorporate each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

57.     Defendants owed Plaintiffs a duty to exercise ordinary care in the design, manufacture, fabrication, assembly, inspection, marketing, distribution, sale and/or supply of its products in such a way as to avoid harm to persons using them, such as Plaintiffs, who were foreseeable users of the car seat equipped with the defective buckle.

58.     Defendants had a duty to refrain from designing, manufacturing, fabricating, marketing, distributing, and selling unreasonably dangerous products, including the duty to ensure that its products do not cause consumers and foreseeable users, like Plaintiffs, to suffer from foreseeable risks of harm.

59.     Defendants knew, or should have known, the defective buckle rendered this product unsafe. The risk that children could not be removed quickly in an emergency makes the buckle used in the subject car seat unreliable, unsafe and a dangerously defective buckle design.

60.     It was entirely foreseeable to, and well-known by Defendants that the harness crotch buckle on the car seat, such as the one used herein, would not properly release on occasion in the normal and ordinary use of said car seat as a result of design defects in the car seat buckle, including the subject car seat buckle.

61.     Defendants breached their duties identified herein and failed to exercise ordinary care in the design, manufacturing and warning of defects for the car seat buckles.

62.     On the occasion in question, Defendants by and through their officers, employees, agents, and representatives, committed acts and omissions, which collectively and severally constituted negligence.  The harness crotch buckle defect and failure to release increased the likelihood of placing the child in the car seat in an extremely dangerous position whereby the

child would not be able to be removed from the car seat, Defendants had a duty to warn consumers, including Plaintiffs, of these defects and of the horrific dangers of the car seat buckles, like the subject car seat.

63.     Defendants further negligently and improperly instituted inadequate and ineffective recalls regarding the crotch buckle in the car seats that only served to cover up the defects rather than prevent the defects from resulting in significant injury or death.

64.     Plaintiffs' injuries were reasonably foreseeable to Defendants.

65.     Plaintiffs could not through the exercise of reasonable diligence have prevented the injuries caused by Defendants' negligence, gross negligence, and recklessness.

66.     Plaintiffs will show that these acts and omissions, when taken separately and/or together, constitute negligence as that term is understood at law.

67.     Plaintiffs will further show that the foregoing acts of negligent were proximate causes of the injuries to Plaintiffs herein, and all subsequent damages.

68.     Defendants' acts and omissions, when viewed objectively from the actor's standpoint, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Defendants nevertheless proceeded with conscious indifference to the rights, safety and welfare of others constituting gross negligence and willful misconduct

**COUNT 2**
**Products Liability: Improper Design**
**North Carolina §§ 99B-6**

69.     Defendants at all times relevant to this action, were engaged in the business of designing, testing, manufacturing, distributing, supplying, and selling car seats, seatbelts, crotch buckle harnesses including the subject car seat. In particular, Defendants jointly and together with Evenflo, designed, tested, manufactured, distributed, and/or sold Plaintiffs' defective car seat buckle.

70.     At the time the car seat buckle left Defendants' control, the foreseeable risks associated with the design exceeded the benefits of the design.

71.     Plaintiffs' defective car seat buckle was defective due to the crotch buckle failure to release at the time the car seat buckles were manufactured or sold by Defendants and when the car seat buckles left Defendants' control.

72.     The defects in the defectively designed car seat buckle described herein are design defects and failure to warn defects.  Defendants had the continuing duty to warn of the defects in the car seat's crotch buckle, including the subject car seat, and the continued duty to inspect and replace the defective crotch buckles, including the subject car seat buckle in order to remedy the defects.

73.     The defective car seat buckle was expected to and did reach users and consumers and Plaintiffs without substantial change in the condition in which it was sold.

74.     The defective crotch buckle was utilized in the Evenflo car seats, including the subject car seat, and was expected to and did reach users and consumers and Plaintiffs without substantial change in the condition in which they were manufactured in.

75.     As a result of the inherent defects in the car seat buckle described herein, Plaintiffs defective car seat buckle was unreasonably dangerous to persons who use or could have reasonably been expected to be affected by those car seats.  Plaintiffs were persons who used or could have reasonably been affected by the defective car seat buckle.

76.     Plaintiffs' defective car seat buckle and other Evenflo car seats with defects in the crotch buckle described herein were in a defective condition to the user or consumer as it was more dangerous than an ordinary consumer or user would expect when used in an intended or reasonably foreseeable manner, creating risk of harm to uses or consumers, including Plaintiffs.

77.     Moreover, safer alternative designs existed at the time the subject car seat buckle was manufactured and left Defendants' control. These safer alternative designs would have prevented or significantly reduced the risk of the incident and the Plaintiffs' injuries and damages, without substantially impairing the car seat buckle's utility.  Furthermore, the safer alternative designs were economically and technologically feasible at the time the product left

Defendants' control by the application of existing and reasonably achievable scientific knowledge.

78. The subject car seat buckle was sold by Defendants to Evenflo and then to consumers for use by individuals like Plaintiffs and was not altered after purchase. The subject, car seat buckle was in a defective condition and unreasonably dangerous as designed, taking into consideration that utility of the car seat buckle and the risk involved for the car seat buckle's use. At the time the car seat buckle left Defendants' control, there were safer alternative designs. At the time the crotch buckle left Defendants' control to be utilized in the Evenflo car seats, there were safer alternative designs. These safer alternative designs were economically and technologically feasible at all times relevant. Such safer alternative designs included but are not limited the size, shape, locking mechanism, and other measures that would have been employed by a reasonable manufacturer.

79. At the time the car seat buckle left Defendants' control, Defendants knew, or in the exercise of reasonable care, should have known about the risk of defective crotch buckle and failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided regarding the dangerous conditions of the car seat, specifically the buckle.

80. Defendants further negligently and improperly instituted inadequate, and ineffective recalls regarding the issue of the crotch buckle used in the subject car seat.

81. The design defects existed in the subject buckle at the time it left Defendants' possession and were a producing, direct and proximate cause of the occurrence, injuries, death and/or Plaintiffs' damages, in an amount to be determined at trial.

## COUNT 3
## Fraud by Non-disclosure

82. As set forth above, Defendants possessed knowledge of the defects in Plaintiffs' car seat buckle. Defendants' conduct described herein directly and proximately caused Plaintiff's injuries. Defendants knew there was cause to take steps to resolve the defective car seat crotch

buckle to prevent injury and economic harm. This knowledge was based, in part, of all the information from records, files, reports and other documents and materials regarding the defects in the crotch buckle.

83.     Defendants intentionally concealed and failed to disclose material facts related to the defects in the crotch buckle to Plaintiffs and the public.

84.     Defendants had a duty to disclose the material facts to Plaintiffs; and Defendants knew: (1) that Plaintiffs were ignorant of the material facts that Defendants did not disclose and/or intentionally concealed; and (2) Plaintiffs did not have an equal opportunity to discovery the material facts that Defendants did not disclose and/or intentionally concealed. Defendants' fraud, fraudulent concealment and fraudulent non-disclosure were all components of the subject incident of the Plaintiffs.

85.     Defendants failed to make adequate, complete, and full recalls regarding the defective car seat buckle, failed to ensure that all proper parties, including consumers and foreseeable users of the product, were alerted to the recall and defective nature of the buckle, and failed to take appropriate action to ensure that the consumers and foreseeable users would know of the dangers associated with such use. Defendants' failures are four-fold: first, any reasonable designer would have anticipated the problems with the faulty design of the subject car seat buckle, which resulted in the buckle becoming difficult if not impossible to unbuckle. Second, had Defendants taken appropriate action to test the buckle, it would have would have revealed the buckle's failures, the buckle would have never been implemented into the car seats and made available for sale to the public. Third, had Defendants taken timely, complete, and appropriate measures after the initial reports of problematic design defects, as far back as 2011, the subject car seat buckle would have never been sold and thus would have never been used by Plaintiffs here. And fourth, had Defendants taken appropriate measures to ensure that all consumers and foreseeable users were on notice of the defects during and after the recall, then Plaintiffs would have been alerted to the dangers and would not have utilized the car seat with

the defective buckle. Any one of these actions would have prevented this incident from occurring, but all of these incidents subject Defendants to liability.

86.      By failing to disclose these material facts, Defendants' intended to induce Plaintiffs to take some action or refrain from acting.

87.      Plaintiffs relied on Defendants' non-disclosure, and Plaintiffs were injured as a result of acting without knowledge of the undisclosed facts.

## COUNT 4
### Fraud by Misrepresentation

88.      Plaintiffs hereby incorporate by reference each and every paragraph set forth in this complaint as if fully copied and set forth at length herein.

89.      Defendants engaged in fraud and misrepresentation based on intentional false statements; reckless false statements; mistaken false statements; deceit; and concealment.

90.      Defendants concealed and suppressed material facts concerning, the crotch buckle harness that was utilized by the Evenflo SureRide/Titan 65 car seat, specifically the crotch buckle release failure and potential contamination of the buckle release mechanism with food or other materials.

91.      Defendants made material omissions and affirmative misrepresentations regarding the subject crotch buckle harness utilized by the Evenflo SureRide/Titan 65 car, seat.

92.      Defendants knew these representations were false and misleading when made.

93.      The subject car seat buckle was, in fact, defective, unsafe and unreliable, because the buckle was subject to failure to release.

94.      Defendants had a duty to timely disclose the safety defects in the crotch buckle to Plaintiffs and the public and failed to do so.

95.      The aforementioned concealments were material, and induced Plaintiffs to act— to wit use the car seat equipped with the defective buckle on the day of the incident in question, resulting in the inability of Ms. Frost to release her young son from a vehicle engulfed in flames.

96.     Plaintiffs reasonably relied on Defendants' fraud and concealments. Had the aforementioned concealments been disclosed, Plaintiffs would not have used or retained the car seat.

97.     The aforementioned representations were also material because they were facts that would typically be relied on by a person, like Plaintiffs, that were using and retaining the car seat.  Defendants knew or recklessly disregarded that their representations were false because they knew children could die as a result of the failure of the crotch buckle to release in an emergency situation.

98.     Plaintiffs relied on Defendants' reputation and failures to disclose this dangerous defect of the car seat buckle and affirmative assurances that the subject car seat buckles were safe when they continued to use and place their children in this car seat.

99.     Defendants had superior knowledge and access to the facts, and the facts were not known to or reasonably discoverable by Plaintiffs.  As stated above, these omitted and concealed facts were material because they directly impact the safety of the Evenflo SureRide/Titan 65 car seat, including the subject car seat buckle. Whether a manufacturer's products are safe and reliable; and whether that manufacturer stands behind its products, is of material concern to a reasonable consumer and a foreseeable end user of a manufacturer's products.

100.    Defendants undertook to put in place no recall and/or an inadequate recall and/or an untimely recall, thereby continuing the concealment of the failure of the crotch buckle to release and allow the child to get out of the car seat.

101.    Plaintiffs reasonably relied on important facts and the fraud and Defendants as set forth herein by acting and failing to act.

102.    Defendants hid or withheld important facts from Plaintiffs that they had a duty to disclose. Plaintiffs did not know the important facts and were harmed as a result of the concealments by Defendants.

103.     The foregoing fraudulent representations and misrepresentations of Defendants were a producing, direct and proximate cause of the Plaintiffs' damages.

**COUNT 5**
**<u>Wrongful Death</u>**

104.     Plaintiffs, Gary Allen Mays and Kristina Rene Frost, are the acting representatives of the estates of their deceased children, Shawna Rene Mays and Tristan Allen Mays, who died as the result of the dangerous condition of the subject car seat and its Crotch buckle failure to release.

**A. Shawna Rene Mays**

105.     Plaintiffs hereby incorporate by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

106.     Plaintiffs Gary Allen Mays and Kristina Rene Frost, as the co-personal representatives and Guardians Ad Litem of the Estate of Shawna Rene Mays, seek all economic and noneconomic damages allowed under the North Carolina Wrongful Death Act, G.S. § 28A-18-2, et seq., including but not limited to:

    a.  Loss of support from the reasonable expected earning capacity of Shawna, if she had lived;
    b.  Loss of services of the decedent;
    c.  Loss of society of the decedent, including loss of companionship, consortium, care, assistance, attention, protection, advise, guidance, counsel, instruction, training, and education that Gary Allen Mays and Kristina Rene Frost would have enjoyed via their relationship with Shawna;
    d.  Loss of prospective inheritance to the decedent's heirs at law at the time of the decedent's death;
    e.  The mental anguish incurred by Gary Allen Mays and Kristina Rene Frost;
    f.  Reasonable medical, hospital, funeral and burial expenses for which Shawna's Estate is liable;
    g.  Pain and suffering endured by Gary Allen Mays and Kristina Rene Frost as a result of the death of Shawna.

**B. Tristan Allen Mays**

107.    Plaintiffs Gary Allen Mays and Kristina Rene Frost, as the Co-personal representatives and Guardians Ad Litem of the Estate of Tristan Allen Mays, seek all the economic and non-economic damages allowed under the North Carolina Wrongful Death Act, G.S. § 28A-18-2, et seq. including but not limited to:

a.   Loss of support from the reasonable expected earning capacity of Tristan, if he had lived;
b.   Loss of services of the decedent;
c.   Loss of society of the decedent, including loss of companionship, consortium, care, assistance, attention, protection, advise, guidance, counsel, instruction, training, and education that Gary Allen Mays and Kristina Rene Frost would have enjoyed via their relationship with Tristan;
d.   Loss of prospective inheritance to the decedent's heirs at law at the time of the decedent's death;
e.   The mental anguish incurred by Gary Allen Mays and Kristina Rene Frost;
f.   Reasonable medical, hospital, funeral and burial expenses for which Tristan's Estate is liable;
g.   Pain and suffering endured by Gary Allen Mays and Kristina Rene Frost as a result of the death of Tristan.

## COUNT 6
### Survival Claims

108.    Plaintiffs, Gary Allen Mays and Kristina Rene Frost, are the acting representatives of the estates of their deceased children, Shawna Rene Mays and Tristan Allen Mays, who died as the result of the dangerous condition of the subject car seat and its Crotch buckle failure to release.

**A. Shawna Rene Mays**

109.    Plaintiffs hereby incorporate by reference each and every paragraph set forth in this Complaint as if fully copied and set forth at length herein.

110.    The death of Shawna Rene Mays was caused by the wrongful act or neglect of Defendants. After the incident, but prior to her death, Shawna lived and experienced tremendous pain, suffering, and disfigurement.

111.     Plaintiffs Gary Allen Mays and Kristina Rene Frost, as the co-personal representatives and Guardians Ad Litem of the Estate of Shawna Rene Mays, seek all economic and noneconomic damages allowed under North Carolina's survival statute, N.C.G.S. § 28A-18-1, et seq., including but not limited to reasonable compensation for the pain and suffering, while conscious, undergone by Shawna during the period intervening between the time of her injury and her death.

**B. Tristan Allen Mays**

112.     The death of Tristan Allen Mays was caused by the wrongful act or neglect of Defendants. After the incident, but prior to his death, Tristan experienced tremendous pain, suffering, and disfigurement.

113.     Plaintiffs Gary Allen Mays and Kristina Rene Frost, as the Co-personal representatives and Guardians Ad Litem of the Estate of Tristan Allen Mays, seek all the economic and non-economic damages allowed under North Carolina's survival statute, N.C.G.S. § 28A-18-1, et seq., including but not limited to reasonable compensation for the pain and suffering, while conscious, undergone by Tristan during the period intervening between the time of his injury and her death.


**COUNT 7**
**Bystander Claims**

114.     Kristina Rene Frost and Gary Allen Mays seek all economic and non-economic damages Defendants allowed under North Carolina law to compensate them for their individual injuries from witnessing the horrific injuries and deaths of their children which were caused by Defendants' conduct described above, which also constitutes negligent infliction of emotional distress.

**A. Bystander Claim for Kristina Rene Frost.**

115.    Kristina Rene Frost was physically present at the scene of the fire where both of her children were burned alive, and also present at the hospital with Shawna as she slowly died from her injuries. Kristina suffered this shock contemporaneously with the incident. This emotional distress caused a physical manifestation or physical consequences, including but not limited to crying spells, nightmares, sleeplessness, increased anxiety, loss of appetite, and other physical consequences. It was reasonably foreseeable to Defendants that the failure to be able to extract a child from a car seat in an emergency because of a defective buckle would cause severe emotional distress to a parent, including Plaintiffs.  As a result, Kristina Rene Frost is entitled to recover all damages appropriate under North Carolina law, including but not limited to those in the past and future for the mental anguish, anxiety, suspense, fright, medical and counseling expenses, and lost wages.

116.    Because there is a 3-year statute of limitations for products liability and personal injury claims in North Carolina. N.C.G.S. § 1-52(16), these claims are timely brought on behalf of Kristina Rene Frost in her individual capacity.

**B. Bystander Claim for Gary Allen Mays.**

117. Gary Allen Mays was present by telephone at the scene of the fire, and/or suffered this shock contemporaneously with the incident. It was reasonably foreseeable to Defendants that the failure to be able to extract a child from a car seat in an emergency because of a defective buckle would cause severe emotional distress to a parent, including Plaintiffs. This emotional distress caused a physical manifestation or physical consequences, including but not limited to crying spells, nightmares, sleeplessness, increased anxiety, and loss of appetite. As a result, Gary Allen Mays is entitled to recover all damages appropriate under North Carolina law, including but not limited to those in the past and future for the mental anguish, anxiety, suspense, fright, medical and counseling expenses, and lost wages.

118.    Because there is a 3-year statute of limitations for products liability and personal injury claims in North Carolina. N.C.G.S. § 1-52(16), these claims are timely brought on behalf of Gary Allen Mays in his individual capacity.

**COUNT 8**
**Products Liability: Failure to Warn**
**North Carolina Gen. Stat. § 99B-5**

119.    Plaintiffs hereby incorporate by reference each and every paragraph set forth in this complaint as if fully copied and set forth at length herein.

120.    Defendants manufactured, marketed, distributed, supplied, and/or placed into the stream of commerce the defective buckle described herein. Plaintiffs would show that the buckle was defectively designed, marketed, manufactured, and was unsafe for its intended purposes at the time the buckle left Defendants' control in violation of N.C.G.S. §§ 99B-5. The car seat buckle was unaccompanied by proper warnings regarding the users of the product who were at risk of serious injury (or their children were at risk of serious injury) if they used the car seats equipped with the defective car seat buckles. Defendants failed to perform adequate testing, and or timely adequate testing, in that the adequate testing would have shown that the buckle was not safe for its reasonable, ordinary, and expected use, which put individuals at risk of serious injury and which full and proper warning accurately and fully reflecting these risks should have been made with respect to the use of this buckle.

121.    Defendants knew, or should have known, that the buckle was dangerously defective and posed an unacceptable risk of serious injury to users that was unknowable by Plaintiffs. The car seat buckle, at the time it left Defendants' control, was so unreasonably defective in its design that a reasonable person, including a user or consumer aware of relevant risks or facts of using the car seat buckle, would not use the buckle. Defendants' conduct is in violations of N.C.G.S. §§ 99B-5.

122.    The car seat buckle was defective due to inadequate warning or instructions because, after Defendants knew or should have known about the risk of the buckle becoming

stuck, it failed to provide adequate warnings to consumers and foreseeable users that could reasonable be expected to catch the attention of a reasonably prudent person in the circumstances that the product was used, that were comprehensible to the average user and that conveyed a fair indication of the nature and the extent of the danger. The failure to give these warnings rendered the car seat buckle dangerous to an extent beyond that which would be contemplated by the ordinary users of the product with ordinary knowledge common to the community.

## VI.
## CONDITIONS PRECEDENT

123.    All conditions precedent have been performed or have occurred.

## VII.
## STATUTE OF LIMITATIONS

124.    There is a 3-year statute of limitations for products liability and personal injury claims in North Carolina. N.C.G.S. § 1-52(16). And North Carolina law tolls the statute of limitations for plaintiffs who are disabled when the cause of action accrued. N.C.G.S. § 1-17(a). A person is considered disabled if the person is within the age of 18 years. N.C.G.S. § 1-17(a).

125.    There is a 2-year wrongful death statute of limitations, but that does not bar the survival claims of the estate, or the minor's wrongful death claims for a number of reasons:

**This Suit is Brought within the 1 Year Savings Provision of a Timely Filed Claim**

a.    First, the North Carolina Rules of Civil Procedure allow for the extension of any statute of limitations for one year from the date of a dismissal without prejudice. of N.C.G.S. §§ 1A-1; N.C. R. Civ. P. 41(a). A lawsuit was first filed against Evenflo regarding the defective car seat buckle on March 18, 2020. AmSafe, Inc., the parent company of all Defendants and the alter-ego of all Defendants, was added to the lawsuit on February 25, 2021. The lawsuit against AmSafe, Inc. was dismissed without prejudice on May 17, 2021. Pursuant to North Carolina Rule of Civil Procedure 41(a), because the action

was timely commenced, and voluntarily dismissed without prejudice, "a new action based on the same claim may be commenced within one year after such dismissal". N.C.G.S. §§ 1A-1; N.C. R. Civ. P. 41(a).

**No Guardian Ad Litem Has Been Appointed Under North Carolina Law; so the Statute of Limitations for the Minors' Claims Has Not Yet Begun to Run.**

    b.  Alternatively, the statute of limitations does not run until this Honorable Court appoints Guardians ad Litem for the minors' estates, which has not yet occurred in the state of North Carolina. "North Carolina courts do not permit a suit to be brought on behalf of an infant by a guardian appointed only in another state." *Genesco, Inc. v. Cone Mills Corp.*, 604 F.2d 281 (4th Cir. 1979) (*citing Tate v. Mott*, 96 N.C. 19 (N.C. 1887)). Thus, the appointment of Mr. Mays and Ms. Frost as representatives, not Guardians, would not be viewed by the courts of North Carolina "as sufficient to start the North Carolina statute of limitations running against" Plaintiffs in the present action. *Id.* Thus, the two year statute of limitations only begins to run once this Court appointed Mr. Mays and Ms. Frost as Guardians Ad Litem.

**Minority Tolling Nevertheless Applies**

    c.  Alternatively, North Carolina's minority tolling provision applies to toll the claims regarding the minor decedents. Under North Carolina law, a statute of limitation does not begin to run against a minor until the minor reaches the age of 18. N.C.G.S. § 1-17. Here, the minor children, as decedents, are not beneficiaries of another's wrongful death, but are themselves the decedents and are the true plaintiffs. North Carolina has a strong interest to protect the rights of infants and minors.

# VIII.
# PRAYER FOR RELIEF

126.     Wherefore, Plaintiffs request that the Court enter an Order or judgment against

Defendants in favor of Plaintiffs, and grant the following relief:

A.    Declare, adjudge, and decree that Defendants' conduct  as alleged herein to be unlawful, unfair, and/or deceptive and otherwise in violation ·of the law;

B.    Award Plaintiffs actual, compensatory, and/or statutory damages. in an amount to be proven at trial;

C.    Award Plaintiffs punitive and exemplary damages as permitted by law and the statutes cited herein in an amount to be proven at trial;

D.    Pre-judgment and post-judgment interest at the maximum rate allowed by law;

E.     Award Plaintiffs the costs of bringing this suit, including reasonable attorneys' fees; *and*

F.    Award Plaintiffs such other and further relief as to which Plaintiffs may be entitled in law or equity.

# IX.
# JURY TRIAL DEMANDED

Plaintiffs hereby demand a Jury Trial on all matters so triable.

Respectfully Submitted,

**HILLIARD MARTINEZ GONZALES LLP**

By: */s/ Emily Beeson*
**Emily Beeson**
NC State Bar # 47567
Email: ebeeson@hmglawfirm.com
**Whitney Butcher**
NC State Bar #44272
Email: wbutcher@hmglawfirm.com
**Marion M. Reilly**
Pro Hac Vice (Forthcoming)
Texas State Bar No. 24079195
Email: Marion@hmglawfirm.com
**Ana Zabalgoitia**
Pro Hac Vice (Forthcoming)
State Bar No. 24093915
Email: ana@hmglawfirm.com

**HILLIARD MARTINEZ GONZALES LLP**
719 S. Shoreline Boulevard
Corpus Christi, Texas 78401
T: 361-882-1612
F: 361-882-3015

**\*HMGService@hmglawfirm.com**
**\*Email for service of pleadings**

    **AND**

*/s/ A. Vince Colella*
**Vince Colella**
Pro Hac Vice (Forthcoming)
**MOSS & COLELLA**
28411 Northwestern Hwy
11th Fl, Ste 1150
Southfield, MI 48034
Email: vcolella@mosscolella.com

***COUNSEL FOR PLAINTIFFS***